IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NELSON R. THREATT, | CIVIL ACTION NO. 9:15-4664-RMG-BM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

The Plaintiff filed the complaint in this action, pro se, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] on August 21, 2013 (protective filing date), alleging disability beginning July 17, 2008 due to sciatic nerve problems; numbness and pain in his left arm; problems with the L4, L5, L6 discs in his back with lower back pain; pain in his neck; pain in both legs; an inability to stand or sit for more than five minutes; the need to sleep in the fetal position; an inability to lay on his back or stomach; limited mobility; and side pain with liver problems. (R.pp. 10, 155, 159, 174, 179).

---

[1]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].



Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on April 29, 2015. (R.pp. 25-39).[2] The ALJ thereafter denied Plaintiff's claims in a decision issued May 26, 2015. (R.pp. 10-19). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-3).

Plaintiff then filed this action in United States District Court, pro se. Plaintiff appears to assert that the ALJ's decision is not supported by substantial evidence, and that this case should be reversed and remanded for further proceedings.[3] The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence

---

[2]Although Plaintiff is currently representing himself, he was represented by counsel at the hearing and while the case was before the ALJ. (R.pp. 10, 27, 144-145).

[3]Plaintiff's pro se complaint does not really contain any specific allegations. However, the federal court is charged with liberally construing complaints filed by pro se litigants to allow them an opportunity to develop a potentially meritorious case. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). As such, the undersigned has liberally construed Plaintiff's Complaint, Brief, and attachments to his Brief in evaluating his claims.



to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Medical Records

Plaintiff's medical records show that Dr. Alfred Rhyne, III of OrthoCarolina performed lower back surgery on the Plaintiff in July 2007, about a year before Plaintiff alleges he became disabled. (R.pp. 239-241). By August 2, 2007, Plaintiff reported "feeling about 75% better" and walked without difficulty. (R.p. 247). Plaintiff was temporarily restricted from work until September 2007, at which time Dr. Rhyne released him back to work without restrictions. (R.pp. 245, 254-261).

On December 13, 2009 (well over two (2) years after he had last seen Dr. Rhyne, and about a year and a half after Plaintiff alleges he had become disabled), Plaintiff was admitted to the



Carolina Pines Regional Medical Center (Carolina Pines) for complaints of "swelling". Plaintiff was noted on admission to be suffering from severe anemia, alcohol intoxication, and other complaints. (R.p. 348). He was discharged the following day with diagnoses of severe anemia, status post blood transfusion, likely secondary to chronic gastrointestinal blood loss; alcohol intoxication; severe alcohol abuse; pancytopenia, likely secondary to chronic alcohol use; poor nutrition; jaundice; tobacco abuse; and elevated liver enzymes with probable liver disease secondary to alcohol use. Plaintiff was counseled (although Plaintiff was thought not to be receptive, as he did not listen while being spoken to and instead watched television) as to his alcohol and tobacco use. (R.pp. 302-340, 348-358). A CT of Plaintiff's liver in December 2009 reportedly revealed a large fatty liver (R.p. 341).

        On December 23, 2009, Plaintiff reported to Dr. George T. Mills that he had back and leg pain with constant pain of 6 or above all the time, and that he had been fired from his job at Tyson's Foods because he could not do the work due to his back.[4] He stated that he could walk short distances, but could not do any lifting or long distance walking. The only medicine Plaintiff was taking at the time was Hemocyte Plus 2. On examination, Dr. Mills noted that Plaintiff had full range of motion with tenderness of his cervical spine, 2+ tenderness in his lumbar spine and also in his cervical and thoracic spine between 3 and 8, no loss of motion in his back, full arm strength, fairly full straight leg raising, and 5/5 (full) strength in both legs with 2+ reflexes and positive pinprick. Dr. Mills noted that Plaintiff was not getting any treatment, and that his prognosis was "certainly guarded because of the constant pain". (R.pp. 272-276).

_____

    [4]Plaintiff advised that he had last worked in July 2008, which is apparently what he bases his disability onset date on. (R.p. 274). See also (R.pp. 29, 179).



Plaintiff was seen again at Carolina Pines a little over a year later, on February 23, 2011, for rectal bleeding. Plaintiff admitted he drank one pint of alcohol before admission, and that he drank alcohol every day. Blood work and x-rays were taken (which showed no evidence of obstruction) and a GI cocktail was administered. It was noted that Plaintiff was able to ambulate independently, could perform all daily activities without assistance, had normal range of motion, was neurologically intact, had full motor strength, and had intact sensation. Plaintiff was discharged with clinical impressions of internal hemorrhoid(s) and acute gastrointestinal bleed. (R.pp. 278-300).

On February 16, 2012, Plaintiff was seen at Tri-County Mental Health because he reported "seeing things". It was recognized that Plaintiff had symptoms of delirium tremens, and he was sent to the emergency room for treatment. The provider concluded that there was no need for further services from the mental health facility. (R.pp. 394-395).

Plaintiff had a consultative examination performed by Dr. Pravin Patel on June 8, 2012. Plaintiff reported a history of back pain of at least eight years stemming from a work injury, with back surgery about seven years prior that did not help him. He also told Dr. Patel that his back pain radiated to his leg and that drinking alcohol helped his back pain. Plaintiff reported that he had GERD for which he did not take any medication, that he lived with his girlfriend, was independent in his activities of daily living, that he did not do any household chores, that he occasionally cooked and watched television, and that his girlfriend went to the grocery store. On physical examination Dr. Patel found that Plaintiff had good peripheral pulses in his extremities with no clubbing, cyanosis, or edema; +2 deep tendon reflexes; and full range of motion of his cervical spines, both shoulders, elbows, wrists, and small joints of his hands. Plaintiff was able to bend forward to touch his toes, but stopped about six inches from his toes. Straight leg raising was 50 degrees supine and 90 degrees



sitting. Plaintiff's hips, knees, ankles, and feet were normal with full range of motion and 5/5 lower extremity power. Plaintiff's gait was normal without an assistive device. Plaintiff could perform tandem walk and managed to walk on his heels and toes with some external support. He could squat, put on his own shoes and socks, and had 5/5 handgrip strength. Dr. Patel thought that Plaintiff could travel without a companion on public transportation, walk around a block on a rough and uneven surface, prepare a simple meal and feed himself, care for his personal hygiene, and handle his own funds if provided (unless he was intoxicated). Dr. Patel's impression was ongoing alcohol abuse, history of gastrointestinal bleed with severe anemia requiring blood transfusion, GERD, alcoholic liver disease, and degenerative disc disease of the lumbar spine, status post surgery. (R.pp. 341-344). Lumbar spine x-rays were unremarkable. (R.p. 345).

Over a year later (in August 2013), Plaintiff began treatment with Dr. Emanuiel Cooper, a general practitioner at Sandhills Medical Foundation (Sandhills). Plaintiff stated that he occasionally drank beer, smoked a pack of cigarettes a day, and reported he had not seen a physician for his back for seven years. Screening for depression was within the normal range, while a physical examination revealed that Plaintiff had normal posture and was neurologically intact with intact sensation, normal motor strength, normal reflexes, and a normal gait. Examination also revealed that Plaintiff had no back pain or muscle spasms, negative straight leg raise testing, and full range of motion of his back (R.pp. 358-360). On August 28, 2013, an MRI of Plaintiff's lumbar spine indicated L3-4 moderate central and paracentral diffuse disc bulge with mild facet hypertrophy causing mild bilateral neural foraminal stenosis; L4-5 post-surgical changes with a focal central/right central recurrent disc protrusion with mild posterior extrusion along with facet arthropathy causing mild-to moderate lateral recess and neural foraminal stenosis bilaterally, with anterior effacement of



the right and left descending L5 nerve roots, 2-3 mm of ventral and posterolateral effacement of the thecal sac compatible with moderate acquired spinal canal stenosis, and Grade 1 degenerative retrolisthesis of L4 on L5; and L5-S1 small central diffuse disc bulge with facet hypertrophy causing mild neural foraminal encroachment and transitional anatomy with partial sacralization at L5. (R.pp. 361-362).

Plaintiff returned to Sandhills on October 7, 2013, where he was found to have a normal neurologic examination, no pain and full range of motion in his spine, negative crossed straight leg raising, and no paraspinous muscle spasm. Dr. Cooper wrote that the August 2013 MRI supported a finding of L4-5 focal central/right central recurrent disc protrusion with mild posterior extrusion causing foraminal stenosis, for which Norco and Neurontin were prescribed. (R.pp. 363-364). On November 19, 2013 Plaintiff told Dr. Cooper that he was concerned about elevated enzymes in the past and reported that he occasionally drank beer. Plaintiff also requested a referral to an orthopedist for consideration of back surgery, and the plan was to schedule an orthopedic appointment with Dr. Rhyne in January 2014. Norco was prescribed. (R.pp. 365-366).

On November 19, 2013, state agency psychologist Dr. Leslie Burke reviewed Plaintiff's medical records, noted that while Plaintiff used to be a heavy liquor drinker he now drank a beer a day, and opined that Plaintiff's alcohol abuse was not a severe impairment. (R.pp. 43-44). On December 3, 2013, state agency physician Dr. Robert Kukla opined that Plaintiff could perform light work,[5] restricted to occasional climbing, balancing, stooping, kneeling, crouching, and crawling.

---

[5]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b)

(continued...)



(R.pp. 45-47).  On March 6, 2014, a second state agency psychologist, Dr. M. Jane Yates, also opined that Plaintiff's alcohol abuse was in full sustained remission and was a non-severe impairment. (R.pp. 69-71).  On March 18, 2014, state agency physician Dr. Lisa Mani opined that Plaintiff had the RFC to perform light work with the same postural limitations as had been noted by Dr. Kukla. (R.pp. 72-74).

Plaintiff returned to Dr. Cooper on August 18, 2014, complaining about chronic lower back pain.  A neurologic examination was normal as to sensory, reflexes, and motor; Plaintiff had a normal gait; full range of motion of his spine; negative crossed straight leg raising; and no paraspinous muscle spasm.  Norco and Ibuprofen were prescribed.  (R.pp. 409-410).  On October 28, 2014, Plaintiff had an elevated glucose level and complained of back pain.  Plaintiff was given a glucometer and test strips and Metformin was prescribed.  He again reported he only occasionally drank beer.  For back pain, Norco and Ibuprofen were to be taken.  Per Plaintiff's request, he was referred to South East Pain Management in Monroe, North Carolina.  (R.pp. 403-404).

On December 18, 2014, Plaintiff's neurologic and musculoskeletal examinations were again normal, although his glucose  (405) and A1C (9.2) levels were elevated.  It was noted that Plaintiff had not brought his blood sugar log book, and that the office had received a telephone call stating that Plaintiff had been selling Norco to the son of the caller.  Plaintiff was given a phone number for a diabetic class, prescribed Metformin and Glucotrol XL, given a prescription for Norco, and referred to South East Pain.  (R.pp. 400-402).

---

[5](...continued)
(2005).



On January 19, 2015, Plaintiff was seen by Dr. Cooper for a check-up and medication refill. Plaintiff reported that he occasionally drank beer, and he denied having sold his medication. Dr. Cooper gave Plaintiff prescriptions for Norco and Mobic, and advised Plaintiff to follow up with pain management as soon as possible. It was noted that Plaintiff's blood sugar control was improved, even though Plaintiff stated he had been taking Metformin only (and not his prescribed Glucotrol). Glucotrol was prescribed for Plaintiff's diabetes, and Dr. Cooper assessed back pain. (R.pp. 397-399).

It is noted that, as attachments to his Brief, Plaintiff submitted copies of medical records from Sandhills. The majority of these records were already part of the record as discussed above (records from August 22, October 7, and November 19, 2013; August 8, October 28, and December 18, 2014; and January 19, 2015); however, Plaintiff did also submit one additional record (dated April 17, 2015) from the time before the ALJ's decision which is not part of the record. On April 17, 2015, Plaintiff complained that he did not feel well and had blood sugars running in the range of 300-400. It was noted that Plaintiff had no side effects from his medication, but had been non-compliant with the dosing regime and had inadequate caloric intake. Plaintiff appeared well groomed, was not in acute distress, and had an alert mental status. APRN Kari Joyner noted that Plaintiff's blood pressure was at goal, his neurologic evaluation was grossly intact, he had normal attention span and ability to concentrate and normal coordination, he was oriented times three, he had appropriate mood and affect, and he had intact associations. Plaintiff reported occasional alcohol use (beer and hard liquor). Plaintiff's glucose level was elevated at 299, but he reported he had been out of Metformin for three weeks and had never obtained Glipizide. Metformin was to be restarted, and



Plaintiff was counseled on noncompliance and diet.  (Attachments to Plaintiff's Brief, ECF No. 30-1 at 19-20).

Plaintiff's exhibits also include records from Sandhills that are dated *after* the ALJ's decision.  On July 30, 2015, Plaintiff reported heavy alcohol use including drinking hard liquor. and advised that  he did not feel well and had been non-compliant with blood sugar checks and his dosing regimen.  Examination revealed that Plaintiff was well groomed, not in acute distress, was thin, had a kyphotic posture, and had a normal gait.  Peripheral vascular examination showed 2+ bilateral peripheral pulses, circulatory temperature warm to touch, present pedal pulse, and no loss of protective sensation. Neurologic examination was grossly intact.  The impression was diabetes mellitus with neurological manifestations.  Plaintiff was noted to be nonchalant about his uncontrolled diabetes, although he became responsive before the end of the visit.  The plan was to determine if Plaintiff had type I (rather than type 2) diabetes, for him to begin using Novolog FlexPen, and for Plaintiff to not use Metformin until testing was done.  Plaintiff was also counseled about alcohol and tobacco abuse (Plaintiff reported smoking a pack of cigarettes every day with a 25-year smoking history and heavy alcohol use).  Screening for depression was within the normal range. (ECF No. 30-1 at 12-15).

On August 10, 2015, it was noted that Plaintiff had an abnormal TSH level, and TT3 (Total Triiodothyronine) was ordered.   (Id. at 11).  On September 18, 2015, Plaintiff returned for a checkup and complained that he did not feel well.  Plaintiff reported heavy alcohol use and smoking a pack of cigarettes per day, and that he had been non-compliant with blood sugar checks and his dosing regimen.  Examination revealed normal findings except that Plaintiff's range of motion was decreased in all joints; range of motion in his spine was decreased and his extension was restricted;



he had tenderness over his lumbar vertebra, sacral region, and sacroiliac region; and he was unable to tiptoe. The plan was to increase dosages of Levemir and Novolog and restart Metformin (Plaintiff's diabetes had been identified as type 2), start a low dose of Lisinopril for hypertension, and start Carisoprodol (a muscle relaxant) for back pain. (ECF No. 30-1 at 6-10).

Plaintiff did not thereafter return to Sandhills until July 15, 2016 (10 months later), at which time he said he needed medication refills and something to help with his sleep and appetite. Medications were prescribed and the plan was for lab work and patient education. (ECF No. 30-1 at 3-5).

### Discussion

Plaintiff was thirty-five years old on his alleged disability onset of date, and forty-two years old at the time of the ALJ's decision. He has a limited (eleventh grade) education, and past relevant work experience as a sanitation worker, poultry hanger, and a heating and air conditioner installer. (R.pp. 17, 28-29, 159, 180). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months.

After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[6] of degenerative disc disease, status post back surgery, cirrhosis, and diabetes (R.p. 12), he nevertheless retained the residual functional

---

[6]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).



capacity (RFC) to perform sedentary work[7] limited to no climbing of ladders, ropes, or scaffolds and no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.  (R.p. 13). At step four, the ALJ found that Plaintiff could not perform any of his past relevant work with this RFC.  (R.p. 17).  However, the ALJ obtained testimony from a vocational expert (VE) and found at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy with these limitations, and was therefore not entitled to disability benefits.  (R.pp. 24-25).

        In his Brief, Plaintiff states that the exhibits attached to his Brief are his medical history through July 2016, that he does not have a current work history due to his medical problems, and that his last work history is from 2008.  (Plaintiff's Brief, ECF No. 30).  Liberally construed, Plaintiff appears to alleging that the ALJ's decision is not supported by substantial evidence, and that the medical records he submitted show that he is disabled.  However, after a careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed.  <u>Laws</u>, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

---

[7]Sedentary work is defined as lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).



## **Substantial Evidence**

The ALJ's decision that Plaintiff could perform a range of sedentary work, and thus was not disabled during the relevant time period, is supported by substantial evidence and correct under controlling law. At step one of the five-step sequential evaluation process[8] for evaluating disability claims, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 17, 2008, Plaintiff's alleged onset date. (R.p. 12). At step two, the ALJ found that Plaintiff's degenerative disc disease, status post back surgery, cirrhosis, and diabetes were severe impairments, and reasonably found that Plaintiff's gastroesophageal reflux disease, which was controlled with medication and for which the record did not reveal the requisite objective or clinical signs and symptoms of any uncontrolled disease process, and his chronic headaches, for which the medical evidence did not show any corresponding limitations, were non-severe. (R.pp. 12-13). At step three, the ALJ specifically considered whether Plaintiff's impairments individually or in combination met or equaled a Listing,[9] and reasonably found that they did not as no treating or examining physician mentioned findings equivalent in severity to a listed impairment and the evidence did not show medical findings that were the same or equivalent to any listed impairment. (R.p. 13).

---

[8]The five steps are: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment(s); (3) whether such impairment(s) meets or equals an impairment set forth in the Listings; (4) whether the impairment(s) prevents the claimant from returning to his past relevant work; and, if so, (5) whether the claimant is able to perform other work as it exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[9]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if his or her impairment meets or is medically equivalent to the criteria of an impairment set forth in the Listings. See 20 C.F.R. § 416.925.



At step four, the ALJ found that Plaintiff was unable to return to his past relevant work as a sanitation worker, poultry hanger, or heating and air conditioning installer because these jobs required the performance of activities precluded by Plaintiff's RFC of less than a full range of sedentary exertion. (R.p. 17). At step five, the ALJ determined that if Plaintiff could perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.25 (this Rule directs a finding of not disabled for a claimant who is a younger individual aged 18-44 with a limited education, with skilled or semiskilled past work for which the skills are not transferable, and a restriction to sedentary work). However, because Plaintiff was further restricted, the ALJ found that the Medical-Vocational Guidelines only provided a framework for decisionmaking, and the ALJ proceeded to determine the extent to which Plaintiff's limitations eroded the unskilled sedentary occupational base. To help in this determination, the ALJ obtained testimony from an VE. At the hearing, the ALJ asked the VE whether jobs existed in the national economy for an individual of Plaintiff's age, education, work experience and RFC, to which the ALJ testified that such a claimant could perform the jobs of sorter, inserter, assembler, and inspector. (R.pp. 36-37). The ALJ determined that the identified jobs represented a significant number of jobs in the regional and national economies, and noted that the VE's testimony was consistent with information contained in the Dictionary of Occupational Titles. As such, based on the testimony of the VE, the ALJ concluded that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy and thus that Plaintiff was not disabled. (R.pp. 17-18). The undersigned can discern no reversible error in these findings. See Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980)[ALJ may rely on VE opinion based on training, experience and familiarity with skills necessary to function in various jobs].

14



In reaching his conclusions, the ALJ considered Plaintiff's subjective complaints as to his limitations and found that, although his impairments reasonably could cause some limitations, his complaints were not fully credible. The decision reflects that the ALJ discussed and evaluated both the medical records and Plaintiff's testimony (R.pp. 14-17) in making this determination, which is what he was required to do. See SSR 96–7p, 1996 WL 374186, at *2 [Where a claimant seeks to rely on subjective evidence to prove the severity of his symptoms, the ALJ "must make a finding on the credibility of the individual's statements, based on a consideration of the entire case record."]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]. Further, when objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight. See SSR 96–7p, 1996 WL 374186, at *1; see also Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996) ["Although a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."].

Here, the ALJ stated that he discounted Plaintiff's credibility because the medical evidence indicated that Plaintiff was able to sit, stand, walk, and move about in a satisfactory manner; he had good use of his upper and lower extremities; he had not required aggressive treatment for pain, had not been referred for pain management; and had no required hospitalization due to pain. He also found Plaintiff less credible because none of Plaintiff's treating physicians had ever indicated that Plaintiff was totally disabled due to pain, while also noting that Plaintiff did not require any



emergency treatment or inpatient hospitalizations for any mental health problems. Thus, the ALJ properly considered inconsistencies between Plaintiff's testimony and other evidence of record in evaluating the credibility of Plaintiff's subjective complaints. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints].

Additionally, the ALJ discounted Plaintiff's credibility based on his daily activities. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) [Accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating pain where she engaged in a variety of activities]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). As noted by the ALJ, Plaintiff was able to engage in such activities as cooking and shopping in stores; (R.pp. 16, 33-34, 203, 342); while Dr. Patel noted as part of his examination that Plaintiff was independent in his activities of daily living. (R.p. 342). Therefore, after a review of the record and evidence in this case, the undersigned can find no reversible error in the ALJ's treatment of the subjective testimony given by the Plaintiff. Ables v. Astrue, No. 10–3203, 2012 WL 967355, at *11 (D.S.C. Mar. 21, 2012) ["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant."](citing SSR 96-7p); Bowen, 482 U.S. at 146 [It is the plaintiff who has the burden of showing that he has a disabling impairment]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976)[finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled].

The ALJ's determination that Plaintiff had the RFC to perform sedentary work with postural restrictions is also supported by the medical record. As noted by the ALJ, Plaintiff's back

16



condition improved following his surgery in July 2007, and his treating surgeon (Dr. Rhyne) released Plaintiff to work without restrictions in October 2007. (R.pp. 14, 245, 254). Plaintiff thereafter required no back treatment over the next six years, during which time he reportedly was not taking prescription medication for pain. He told Dr. Patel that he was not even taking over-the counter pain medication. (R.pp. 15, 274, 341, 358); see Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Mickles, 29 F.3d at 921 [Finding that Plaintiff's use of "relatively mild over-the-counter-medication" for joint pain and no medication for headaches supported the ALJ's finding that Plaintiff's complaints were not credible]. As noted by the ALJ, Plaintiff also reported no adverse side effects from the pain medication prescribed by Dr. Cooper. (R.pp. 16, 35).

Further, examining physicians routinely found that Plaintiff was in no acute distress, had 5/5 strength, and had full range of motion in his back. (R.pp. 14-15, 275, 343-344). Examinations by Dr. Cooper, Plaintiff's treating physician, indicated that Plaintiff had no pain with movement, normal posture, full strength, full range of motion in his back, and a normal gait. (R.pp. 15-16, 359, 364, 366, 397-398, 401, 404, 407, 410). Although Plaintiff had a couple of ER visits in 2009 and 2011 for cirrhosis and was treated for delirium tremens in 2012, Plaintiff continually reported thereafter that he was only occasionally drinking alcohol. (R.pp. 44, 70-71, 358, 365, 397, 400, 403, 406, 409). Plaintiff also testified at his hearing that alcohol had not been a problem for him since his cirrhosis diagnosis, that he only occasionally drank beer (he stated that he and his friends got together on the weekends and drank beers), and that the last time he drank to excess (as far as abusing alcohol) was in 2012. (R.p. 33). As for his diabetes, the evidence shows that when Plaintiff



took his medication for diabetes, his condition improved, and he testified that his diabetes would not prevent him from working. (R.pp. 16, 31, 397).

Moreover, with the exception of comments from Dr. Mills, which the ALJ properly discounted as discussed below, there is no indication that any of Plaintiff's treating or examining physicians placed any restrictions on his ability to work or opined that he was disabled. See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)[finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability]; see also Craig v. Chater, 76 F.3d at 589-590 [Noting importance of treating physician opinion]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]. Although Dr. Mills stated that Plaintiff reported pain as a 6 (on a scale of 10) and said that Plaintiff could only walk a short distance of about half a block and do no lifting to speak of at all, the ALJ properly discounted this statement because it was not well supported by clinical findings and testing, was inconsistent with Plaintiff's benign clinical presentation, and was based heavily on Plaintiff's own reports. (R.p. 14). See generally, (R.pp. 272-276). An ALJ may give less weight to a medical opinion, even one from a treating source (here, Dr. Mills appears to have been only a one-time examining physician), if it is not well supported or if it is inconsistent with other evidence in the record. See 20 C.F.R. §§ 404.1527(c)(3)–(4), 416.927(c)(3)–(4); Craig v. Chater, 76 F.3d at 590; see also Burch v. Apfel, 9 F. App'x 255, 258–260 (4th Cir. 2001) [ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with his own progress notes]; Bradshaw v. Astrue, No. 2:08cv033, 2011 WL 4344538, at * 6 (W.D.N.C. Sept.15, 2011)[indicating that the ALJ properly



gave little weight to the opinion of a consultative examiner where the opinion was inconsistent with other medical evidence of record].

Finally, the ALJ's determination that Plaintiff could perform a reduced range of sedentary work is also supported by the opinions of the state agency physicians, who actually found that Plaintiff could perform an even higher level of light work.  See Johnson v. Barnhart, 434 F.3d at 657 [ALJ can give significant weight to opinion of medical expert who has thoroughly reviewed the record]; 20 C.F.R. §§ 404.1527(e); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996) ["Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."]; see also  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].  Indeed, it is readily apparent that the ALJ gave Plaintiff every benefit of the doubt by assigning Plaintiff an RFC that was even *more* restrictive than that found and opined to by the state agency physicians.  See Marquez v. Astrue, No. 08-206, 2009 WL 3063106, at * 4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner]; see also Siler v. Colvin, No. 11-303, 2014 WL 4160009, at * 5 (M.D.N.C. Aug. 19, 2014) [Same]; cf. Muir v. Astrue, No. 07-727, 2009 WL 799459, at * 6 (M.D.Fla. Mar. 24, 2009)[No error where ALJ gave Plaintiff even a more restrictive RFC than the medical records provided].

Therefore, the undersigned finds no reversible error in the ALJ's RFC findings and determination.  Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].



## New Evidence

Liberally construed, Plaintiff may be attempting to argue that this action should be remanded to the Commissioner based on the evidence submitted with his Brief.

A district court may review the Commissioner's denial of benefits pursuant to either sentence four or sentence six of 42 U.S.C. § 405(g).  See Shalala v. Schaefer, 509 U.S. 292, 296 (1993)[stating sentence four and sentence six are the "exclusive" methods by which courts may remand social security appeals].  Under sentence four, review is limited to the pleadings and the administrative record.  See 42 U.S.C. § 405(b); Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)(en banc)["'Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence.'" ](quoting Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972).  Conversely, a remand may be appropriate under sentence six of 42 U.S.C. § 405(g) where new information is presented to the Court that was *not* part of the administrative record, "upon a showing that [this] new evidence [ ] is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g); see also Schaefer, 509 U.S. at 297 n. 2 ["Sentence-six remands may be ordered in only two situations: where the [Commissioner] requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency."](citations omitted); Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991)[discussing the difference between a sentence four and a sentence six remand, and noting that in a sentence six remand the district court "remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding."].



Here, the majority of the medical records submitted by Plaintiff are already a part of the record (ECF No. 31-1 at 25-48; R.pp. 358-360, 363-366, 397-410), were considered by the ALJ, and do not constitute a basis for remand. <u>See</u>, discussion, <u>supra</u>. The remainder of the evidence submitted by Plaintiff (Sandhill records from April 2015 to July 2016) is not part of the administrative record that was before the Commissioner, and "[r]eviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence." <u>Huckabee v. Richardson</u>, 468 F.2d 1380, 1381 (4th Cir. 1972); <u>see also</u> 42 U.S.C. § 405(g). Therefore, the Commissioner's decision here should not be reversed under sentence four based on records submitted by the Plaintiff which were not part of the administrative evidence.

Finally, Plaintiff had failed to show that this action should be remanded under sentence six to consider any new evidence. Such additional evidence must meet four prerequisites before a reviewing court may remand the case to the Commissioner on the basis of newly discovered evidence, as follows:

1.  The evidence must be **relevant** to the determination of disability at the time the application was first filed and not merely cumulative.

2.  The evidence must be **material** to the extent that the Commissioner's decision might reasonably have been different had the new evidence been presented.

3.  There must be **good cause** for the claimant's failure to submit the evidence while the claim was before the Commissioner.

4.  The claimant must present to the remanding court at least a **general showing** of the nature of the new evidence.



See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[10]

Looking at these factors, Plaintiff must establish that the evidence was "relevant to the determination of disability at the time the application was first filed and not merely cumulative." Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983). In this case, the April 2015 treatment note is not new as it was in existence at the time of the ALJ's decision. See Sullivan v. Finkelstein, 496 U.S. at 626. Plaintiff was represented by an attorney at the time and demonstrates no good cause for not producing the note earlier. Further, even if Plaintiff could show that the note is new and that there was good cause for not submitting it previously (which he has not), it is not material as it is merely cumulative of the other evidence in the record. The April 2015 treatment note continues to indicate that Plaintiff was non-compliant with treatment for his diabetes, while examination revealed that he was in no acute distress, was neurologically intact, and generally had normal examination findings. (ECF No. 30 at 21-23). Further, Plaintiff testified at the hearing that his diabetes would not prevent him from working. (R.p. 31).

As for the records submitted that are dated after the ALJ's decision, they are dated more than two years after Plaintiff's date last insured for DIB (December 31, 2013) and are not retrospective, such that Plaintiff fails to show that these records are material. See Wilkins, 953 F.2d

---

[10]In Wilkins v. Secretary of Dep't of Health & Human Serv., 925 F.2d 769 (4th Cir.1991), rev'd on other grounds, 953 F.2d 93 (en banc), the court suggested that the more stringent Borders four-part inquiry may be superceded by the standard in 42 U.S.C. 405(g). Id. at 774; see Wilkins, 953 F.2d at 96 n. 3. The standard in 42 U.S.C. § 405(g) allows for remand where "there is new evidence which is material and ... there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." However, Borders has not been expressly overruled, and the Supreme Court of the United States has not suggested that the Borders construction of 42 U.S.C. § 405(g) is incorrect. See Sullivan v. Finkelstein, 496 U.S. 617, 626 n. 6 (1990). In any event, even if the less stringent test is applied, Plaintiff has failed to show that this case should be remanded based on new evidence, because as is discussed hereinabove he has failed to show that the new evidence is material.



at 96 ["Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome."]. While Plaintiff has also applied for SSI benefits, the new records still pertain to Plaintiff's condition after the relevant period for consideration of his claim, which ended on the date of the ALJ's decision (May 26, 2015). See 20 C.F.R. §§ 404.620 and 416.330 [an application remains in effect until a final determination is made on the application; if a claimant first meets eligibility requirements after the final determination on an application, a new application for benefits must be filed]. Hence, although the September 2015 records may show some worsening of Plaintiff's condition (physical examination in September 2015 indicated decreased range of motion in Plaintiff's joints and spine with tenderness over his lumbar vertebra, sacral region, and sacroiliac region), none of these records are retrospective. As such, there is no indication that these records are material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been presented. At most, the newly submitted evidence shows a decline in Plaintiff's condition after the ALJ's decision, not that these conditions were disabling for a period relating back for at least twelve months during the relevant time period.

If this new evidence shows a deterioration in Plaintiff's condition after the ALJ's decision, it might be grounds for a new application for benefits, but it is not a basis for remand. See Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997)["Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for benefits."]; see also Godsey v. Bowen, 832 F.2d 443, 445 (7th Cir. 1987); Sanchez v. Secretary of Health & Human Servs., 812 F.2d 509, 512 (9th Cir. 1987). Therefore, Plaintiff is not entitled to relief on this evidence.



## Conclusion

Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir.1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be affirmed.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

December 5, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

